**Marsha ASHLEY, Plaintiff,**

v.

**MORTON INTERNATIONAL, INC., Defendant.**

**No. CV 98–1968–CAS (JGx).**

United States District Court, C.D. California, Western Division.

Feb. 9, 1999.

Kim H. Pearman, Van Nuys, CA, for plaintiff.

McDermott Will & Emery, Peter D. Holbrook, Tambra L. Raush, Newport Beach, CA, for defendant.

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SNYDER, District Judge.

### I. *Introduction*

Plaintiff's complaint alleges a single cause of action for denial of benefits pursu-

ant to the terms of an Employee Retirement Income Security Act ("ERISA") plan. Defendant brings the present motion for summary judgment,[1] arguing that the decision to deny benefits was neither arbitrary nor capricious and, therefore, that its decision must be upheld as a matter of law.

## II. *Factual Background*

Plaintiff Marsha Ashley ("Ashley") was an at-will employee of defendant Morton International, Inc. ("Morton") from 1980 until she was terminated in 1997. At the time of her termination, Ashley was a Human Resources/Office Manager for Morton. While plaintiff makes allegations of discrimination and other improper motives for her termination, her first amended complaint states a single claim, brought under ERISA, for recovery of benefits due under the terms of a pension plan. Ashley alleges that, at the time of her termination, she was entitled to payment of $15,384.60 pursuant to the terms of Morton's Separation Allowance Policy. In addition, she alleges that by terminating her prior to the end of the fiscal year, Morton prevented her from earning $6,000.00 in incentive benefits to which she would have been entitled pursuant to the company's incentive plan.[2]

Morton asserts that it terminated Ashley for cause and, thus, that she is not entitled to severance or incentive pay pursuant to the terms of its plans. Specifically, Morton asserts that Ashley violated an express company policy by using her corporate credit card for personal charges. At issue in plaintiff's termination were eleven charges totaling $1,389.90. One of those charges, for $104.00, was determined to have been for authorized company travel. Three of the charges were made in August 1996; six were made in December 1996; and one was made in April 1997. Plaintiff was terminated in May 1997.

Ashley admits that she used the corporate card for personal charges, but asserts that it was a common practice for employees to charge personal travel expenses to the credit card account through the company's travel agency and later reimburse Morton for those charges. She claims that she was not aware that the August 1996 charges were to the corporate card, and states that she intended to repay all of the remaining personal charges. Ashley states in her declaration that employees routinely billed personal travel expenses to their corporate cards and, if they failed to reimburse the company promptly, were notified of the outstanding personal charges. Plaintiff argues that she should have been afforded the same type of notification before being terminated.

In support of her assertion that other employees were treated differently with regard to the reimbursement policy, plaintiff offers only some evidence that another employee, Michael McNaughton, was accused of failing to reimburse the company for charged expenses and that McNaughton was not fired, but rather resigned from his position.

1. On August 24, 1998, this Court denied defendant's motion for summary judgment, brought on substantially the same grounds. However, that motion was brought prior to the commencement of discovery and the Court declined to grant summary judgment on the record then before it. The instant motion is brought after both parties have had an opportunity to more fully develop the record. The Court finds that defendant has not acted improperly in bringing its motion and, therefore, denies plaintiff's request for sanctions.

2. Defendant has proffered evidence which shows that, under the incentive plan, a bonus would only be paid if the employee was still employed by the company at the end of the operative year. Any bonus earned but unpaid at the time of termination is forfeited by operation of the policy. *See* Robert Currell Decl., Ex. K, ¶ J. Furthermore, there is no evidence before this Court that the bonus program to which plaintiff refers is governed by ERISA, under which this action was brought. For these reasons, the Court declines to review *the propriety of defendant's failure to pay* plaintiff any funds under the bonus plan for the year during which she was terminated.

Ultimately, plaintiff argues that the credit card issue was a pretext for terminating her so that her position could be given to the wife of a corporate executive who was moving to Southern California. However, plaintiff offers no evidence that defendant had any intention of replacing plaintiff prior to her termination.

### III. *Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### IV. *Discussion*

#### A. *Standard of Review*

A denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996). Where the benefit plan gives the administrator discretionary authority, the Court instead applies an "arbitrary or capricious" standard when reviewing the decision. *Snow*, 87 F.3d at 330; *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1321 (9th Cir.1995). The *Snow* court also noted that the arbitrary or capricious standard is identical to an abuse of discretion standard. *See Snow*, 87 F.3d at 331.

Here, defendant has demonstrated that the plan administrator was Keith Carlson ("Carlson"), Human Resources Manager for defendant. As plan administrator, Carlson was bound by the terms of defendant's Personnel Policy & Procedure Manual in administering defendant's separation allowance program. The separation allow-

ance program provides for a set amount of compensation for employees who have been terminated by the company. However, such compensation is not available to employees who have been "[d]ischarge[d] for cause such as ... willful misconduct or refusal to perform the job satisfactorily; flagrant violation of working procedures or Company rules; or for actions which in the judgment of the Company are injurious to the Company's operations and/or reputation." Robert J. Currell Decl., Ex. F, ¶ 4(b).

Defendant has also proffered evidence that Carlson, as the human resources manager, was "directly involved in the decision to terminate [plaintiff's] employment." Robert J. Currell Decl., Ex. H. The Court finds that Carlson's involvement in the decision to terminate plaintiff is directly tied to Carlson's role as plan administrator, and that in deciding to deny separation benefits, Carlson was both construing the terms of the plan and exercising discretion over eligibility for benefits under an ERISA plan, within the meaning of *Snow* and *Firestone*. Therefore, the Court finds that the proper standard of review is "arbitrary or capricious."

■ The standard of review may be altered somewhat if it is shown that the defendant was operating under a conflict of interest when it made the determination to deny benefits. In such a case, the Supreme Court has stated that "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. A conflict is created where the defendant was both the employer and the plan administrator, vested with the authority to make coverage determinations when benefits will be paid from funds it controls. *Pilon v. Retirement Plan for Salaried Employees of Great Northern Nekoosa Corp.*, 861 F.2d 217, 218 (9th Cir.1988); *see also Snow*, 87 F.3d at 331.

■ Within the Ninth Circuit, *Firestone* has been interpreted to require

that, beyond a showing of formal conflict, the plaintiff must also come forward with "further evidence indicating that the conflicting interest caused a breach of the administrator's fiduciary duty to the beneficiary." *Atwood*, 45 F.3d at 1322–23. Unless the plaintiff offers such "material, probative evidence, beyond the mere fact of the apparent conflict," the Court is bound to apply traditional abuse of discretion review. If the plaintiff offers such evidence, the burden of proof then shifts to the defendant to demonstrate that the conflict in fact did not influence its decision. *Lang v. Long–Term Disab. Plan*, 125 F.3d 794, 798 (9th Cir.1997). In the instant case, although it is clear that the plan administrator was also a managerial level employee of defendant, plaintiff has provided no proof that there was a conflict or that any conflict impacted the decision to deny benefits. Therefore, the Court will apply the arbitrary or capricious standard without alteration.

**B.** *Application of the Arbitrary or Capricious Standard*

■ To show that the administrator's decision was arbitrary or capricious, plaintiff must prove that the administrator made "a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Atwood*, 45 F.3d at 1323–24. "That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is 'relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'" *Snow*, 87 F.3d at 332 (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994)). When reviewing the defendant's decision to deny coverage for arbitrariness or capriciousness, the Court must consider only the information that the defendant had

before it when it decided to deny benefits.[3] *Snow*, 87 F.3d at 332; *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471–72 (9th Cir.1993).

■ It appears that Carlson's decision to deny benefits to plaintiff was based on substantial evidence that plaintiff's termination was "for cause" within the meaning of defendant's separation allowance policy. Indeed, plaintiff does not deny that her failure to reimburse defendant was a violation of company policy that could constitute grounds for termination. Furthermore, plaintiff has not shown that evidence of an improper motive for her termination was before the plan administrator, or that the plan administrator himself acted with an improper motive in denying her benefits.[4] The Ninth Circuit has made it clear that it would be error for this Court to consider evidence that was not before the plan administrator when he made his determination. *See Snow*, 87 F.3d at 332. Therefore, the Court finds that plaintiff has not adduced evidence that can overcome the arbitrary or capricious standard of review of the administrator's denial of her benefits. Accordingly, defendant's motion for summary judgment is granted.

3. The information available to the defendant in the course of making its decision is set forth in the Currell Declaration and the exhibits thereto.

4. Even if the Court were to consider evidence outside the record that was before the administrator, the evidence proffered by plaintiff does not support the conclusion that plaintiff was treated differently from other employees with regard to enforcement of the reimbursement policy. Plaintiff's sole evidence on this point is that another employee, also accused of failing to reimburse the company, voluntarily resigned from his position. The Court fails to see how this proves that the policy was being enforced inconsistently.